UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN JAMES TAYLOR,

Plaintiff,

v. Case No. 8:26-cv-1966-TPB-SPF

SERGEANT CHRISTOPHER JOHN THOMAS, et al.,

Defendants.
_______________________________________/

**ORDER of PARTIAL DISMISSAL**

Kevin James Taylor, a pretrial detainee, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] He sues seven officers of the Pasco County Sheriff's Office as well as Pasco County Sheriff Christopher Nocco for excessive force and related civil rights violations that allegedly occurred during his arrest on November 11, 2023, in New Port Richey, Florida.

Earlier orders (Docs. 5 and 11) permitted Taylor leave to proceed *in forma pauperis* but denied his repeated requests to stay this action until he is released from custody. Upon review, Taylor may proceed on his excessive force

[1] Publicly-available records show that Taylor awaits trial on felony charges of possession of methamphetamine and armed trespass and a misdemeanor charge of resisting an officer without violence. *State v. Taylor*, No. 23-CF-004852 (Fla. 6th Jud. Cir.).

claim, his false arrest claim must be stayed, and the remainder of his claims must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A.[2] The dismissal is without prejudice to Taylor filing an amended complaint.

## I. Complaint

Taylor alleges the following: on November 11, 2023, at approximately 11:15 p.m., he was lawfully present inside a private residence with the property owner's knowledge and permission. (Doc. 1 at 37) The property owner was not present. (*Id.*) Taylor's brother lived next door to the property, served as its overseer, and provided a key to Taylor. (*Id.*)

Responding to a neighbor's call, Deputies Jones, Cheatham, and Childress entered onto the property without a warrant or consent. (*Id.* at 38) The deputies looked inside the windows of the residence and discovered Taylor asleep in a bedroom. (*Id.*) Taylor requested that the deputies leave the property, but they refused. (*Id.*) The deputies banged on the windows with their flashlights and shouted threats at Taylor. (*Id.* at 39) Deputy Jones

---

[2] Under 28 U.S.C. § 1915A(a), the Court must screen certain civil suits brought by prisoners to determine whether they should proceed. A court is required to dismiss a complaint (or any portion thereof) it is "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e). The Court must read a plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972).

questioned neighbors about who owns the property and contacted her supervisor, Sergeant Thomas. (*Id.*)

When Sergeant Thomas arrived on the scene, he instructed the deputies to make sure Taylor did not escape. (*Id.* at 40) For approximately 70 minutes, Sergeant Thomas and the deputies waited for the property owner to arrive with a key to the residence. (*Id.*) They harassed and threatened Taylor while surrounding the exterior of the residence. (*Id.*)

During a pre-confrontation meeting, Sergeant Thomas instructed the deputies to use lethal force if necessary. (*Id.* at 41) Deputy Jones falsely reported to the other deputies that Taylor had a machete, "had been outside banging on neighbors' windows minutes before deputies arrived," and "has had some not so pleasant encounters" with law enforcement. (*Id.*) Deputies Jones and Cheatham shared this false information with additional unnamed deputies who arrived on the scene. (*Id.*)

When Sergeant Thomas and the deputies entered the residence, Taylor's hands were raised and empty, and he was not resisting. (*Id.* at 44) Deputies Hemby and Cheatham deployed their tasers, simultaneously striking Taylor. (*Id.*) Deputy Cheatham deployed his taser once, while Deputy Hemby "hit the 'hard' button on his taser and continued to tase [Taylor] multiple times as he lay on the ground unable to move." (*Id.*)

As a result of the incident, Taylor suffered back and neck injuries, severe nerve damage, and post-traumatic stress. (*Id*. at 45) He "was in a wheelchair for approximately 2 months following this incident." (*Id*.) Despite the use of force and Taylor's "obvious" physical and mental needs, deputies refused to provide medical or mental health care. (*Id*.) Taylor has never received medical care for the injuries he sustained during the incident. (*Id*.) In addition, Taylor was charged with armed trespassing, possession of narcotics, and resisting arrest without violence based on "false reports and fabricated probable cause." (*Id*. at 47)

Taylor names as defendants all the officers who responded to the scene and sues them in their individual capacities, including Sergeant Thomas and Deputies Hemby, Cheatham, Jones, Childress, Farrell, and Peter. He also names as a defendant Sheriff Christopher Nocco and sues him in his official capacity. Taylor seeks to recover compensatory and punitive damages. (*Id*. at 50)

## II. Discussion

As an initial matter, except with regard to his excessive force claim against Deputies Hemby and Cheatham and his false arrest claim, Taylor's Complaint is an impermissible shotgun pleading. It "fail[s] . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d

1313, 1323 (11th Cir. 2015). The Complaint is replete with conclusory and vague allegations, and although Taylor generally specifies which claims he seeks to bring against which defendants, he fails to assert specific allegations supporting his claims against the individual defendants.

Additionally, the Complaint is subject to dismissal for failure to state a claim as explained below:

**Count 1: Excessive Force**

In Count 1, Taylor asserts an excessive force claim against Sergeant Thomas and Deputies Hemby, Cheatham, Jones, Childress, Farrell, and Peter. (Doc. 1 at 28) He alleges that the deputies deployed their taser even though he was unarmed, with his hands raised, not resisting, and "on the ground incapacitated." (*Id.*) He also vaguely alleges that the defendants "piled on top of [him] with their knees." (*Id.*)

An excessive force claim arising out of an arrest is governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Settle v. Collier*, 160 F.4th 1282, 1288 (11th Cir. 2025) (citation omitted). "The touchstone of the Fourth Amendment is reasonableness, as measured in objective terms." *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). The ultimate question is "whether the force deployed was justified from the perspective of a reasonable officer on the

scene, taking due account of both the individual interest and the governmental interests at stake." *Id.* (quotation omitted).

The reasonableness inquiry analyzes the "totality of the circumstances[,]" paying "careful attention to the facts and circumstances relating to the incident, as then known to the officer." *Id.* at 80; *see also Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."); *Jones v. Ceinski*, 136 F.4th 1057, 1062 (11th Cir. 2025) (quoting *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1354 (11th Cir. 2015)) ("We do not consider whether an officer acted in good faith or sadistically and maliciously."). The courts, however, must be careful not to analyze with 20/20 hindsight vision because deputies are often required "to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving[.]" *See Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014).

With respect to tasers, the Eleventh Circuit has explained that unprovoked taser use "against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). This differs from the constitutionally permissible "use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act

belligerently toward police[.]" *Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) (citation modified); *see Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) ("Although being struck by a taser gun is an unpleasant experience, the amount of force [the officer] used—a single use of the taser gun causing a one-time shocking—was reasonably proportionate to the need for force and did not inflict any serious injury[,]" where the plaintiff was "hostile, belligerent, an uncooperative"). Instead, it is "clearly establish[ed] that the repeated tasing of a subdued arrestee who has ceased any resistance or threatening conduct is excessive force in violation of the Fourth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1276 (11th Cir. 2021).

Taylor alleges that when deputies entered the residence, his hands were raised and empty, and he was not resisting. (Doc. 1 at 44) He alleges that Deputies Hemby and Cheatham simultaneously deployed their tasers, and that Deputy Hemby "hit the 'hard' button on his taser and continued to tase [Taylor] multiple times as he lay on the ground unable to move." (*Id.*) Because Taylor alleges that Deputies Hemby and Cheatham deployed their tasers when he was not resisting, these allegations, accepted as true, are sufficient to state an excessive force claim against them.

However, to the extent that Taylor alleges an excessive force claim against Sergeant Thomas and Deputies Jones, Childress, Farrell, and Peter, such claim lacks sufficient factual allegations. Taylor merely alleges that the

defendants "piled on top of [him] with their knees." (Doc. 1 at 28) He fails to allege how each of these defendants is responsible for applying excessive force. Accordingly, any excessive force claim against Sergeant Thomas and Deputies Jones, Childress, Farrell, and Peter must be dismissed without prejudice.

**Count 2: Deliberate Indifference to Serious Medical Needs**

In Count 2, Taylor attempts to state a claim for deliberate indifference to his serious medical needs against Sergeant Thomas and Deputies Hemby, Cheatham, Jones, Childress, Farrell, and Peter. (Doc. 1 at 29) He alleges that the multiple taser deployments and violent confrontation that he suffered during his arrest caused him serious medical and mental health injuries that necessitated medical treatment. (*Id.*) He alleges he suffered back and neck injuries, severe nerve damage, and post-traumatic stress, which necessitated the use of a wheelchair for two months. (*Id.* at 45) He vaguely alleges that he requested, but was denied, medical care. (*Id.* at 30)

Pretrial detainees have a right to adequate medical care under the Due Process Clause of the Fourteenth Amendment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985). The minimum standard of medical care required by the Due Process Clause is identical to the standard for convicted persons under the Eighth Amendment. *Id.* To state a claim for deliberate indifference to a serious medical need, a plaintiff must show (1) that he "had a serious medical need," (2) the prison official's "deliberate indifference to that

need," and (3) "causation between that deliberate indifference and [the prisoner's] injury." *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019). A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. An official acts with deliberate indifference "if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 40 (1994)). To demonstrate "subjective recklessness," a plaintiff must show that "the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Stalley*, 124 F.4th at 1283-84 (quoting *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024)). This standard mirrors that of "subjective recklessness as used in the criminal law." *Wade*, 106 F.4th at 1262 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Further, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs . . . though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). But a claim for deliberate indifference is not available simply

because a prisoner and the prison medical staff disagree on a diagnosis or modes of treatment. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Even if a defendant actually knew of a substantial risk to inmate health or safety, the defendant is not liable under the Eighth Amendment if he "responded reasonably to the risk." *Wade*, 106 F.4th at 1261. Medical treatment gives rise to a claim for deliberate indifference "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).

Taylor vaguely alleges that he suffered back and neck injuries, nerve damage, and post-traumatic stress that necessitated medical care, which he was denied. He makes no allegations to show that he had a serious medical need that mandated treatment. And, he fails to show that any defendant acted with subjective recklessness by denying him medical care. Accordingly, his deliberate indifference claim must be dismissed without prejudice.

**Count 3: False Arrest**

In Count 3, Taylor alleges that Sergeant Thomas and Deputies Hemby, Cheatham, Jones, Childress, Farrell, and Peter entered a private residence and seized him without a warrant, consent, probable cause or exigent circumstances. (Doc. 1 at 30) He alleges he was detained and ultimately

arrested on the basis of fabricated facts, including that he possessed a machete, and without probable cause. (*Id.*)

"A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). An unlawful or false arrest claim "challenges as constitutionally deficient an officer's on-the-spot determination of probable cause." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1330 (11th Cir. 2024). In this context, the court "ask[s] whether the totality of the circumstances known to the arresting officer at the time of the seizure provided probable cause to suspect the plaintiff of a crime[;]" and the court "do[es] not consider evidence that the arresting officer may have harbored ill will toward the plaintiff." *Id.* "[A]ll that matters is whether an objectively reasonable officer could have made the same seizure under the same circumstances." *Id.* "To succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). "Probable cause exists when 'a reasonable officer could conclude . . . that there [is] a substantial chance of criminal activity." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022).

Publicly available records show that a jury trial on Taylor's criminal charges of possession of methamphetamine, armed trespass, and resisting an officer without violence is scheduled to begin October 15, 2026. *State v. Taylor*,

No. 23-CF-004852, Doc. 230 (Fla. 6th Jud. Cir.). "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). "[A] federal court should not interfere with ongoing state criminal proceedings where the state court conviction and/or sentence is not yet final." *Johnson v. Florida*, 32 F.4th 1092, 1099 (11th Cir. 2022) (citing *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). "*Younger* abstention is required when: (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state interest; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue." *Id.*

Because Taylor's state criminal case is ongoing, the criminal prosecution for a violation of state law implicates an important state interest, and the state court provides Taylor an adequate forum to raise his claims, the Court must abstain from interfering in the ongoing state court proceeding. *Kugler v. Helfant*, 421 U.S. 117, 123–24 (1975). Taylor will have an adequate opportunity to raise his claims regarding the validity of his arrest in the state criminal prosecution. *See Chestnut v. Canady*, 853 F. App'x 580, 583 (11th Cir. 2021) ("[I]n the absence of authority to the contrary, a federal court should assume

that a state's procedures will afford the plaintiff an adequate remedy."). And, because Taylor seeks monetary relief that he cannot recover in his state criminal case, the Court must stay this case as to Taylor's false arrest claim until the state criminal case concludes. *Tribble v. Tew*, 653 F. App'x 666, 667 (11th Cir. 2016) ("Tribble seeks money damages, which are unavailable in his state criminal proceeding, and Tribble correctly notes that his right to seek relief at a later date may be frustrated by the applicable statutes of limitation.") (citing *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)). Alternatively, Taylor may voluntarily dismiss his false arrest claim pending the outcome of his criminal proceedings.[3]

**Count 4: First Amendment Retaliation**

In Count 4, Taylor attempts to state a claim for First Amendment retaliation against Sergeant Thomas and Deputies Hemby, Cheatham, Jones, Childress, Farrell, and Peter. (Doc. 1 at 31–32) He alleges these defendants retaliated against him for his "refusal to cooperate in previous investigations and [for] asserting his rights[.]" (*Id.* at 31) According to Taylor, these

[3] A false arrest claim accrues when the legal process commences, and a four-year statute of limitation applies to a federal civil rights claim. *Williams v. Aguierre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("A claim of false arrest or imprisonment under the Fourth Amendment . . . accrue[s] when either the seizure ends or the plaintiff is held pursuant to legal process.") (citing *Wallace*, 549 U.S. at 388–89); *McGroarty v. Swearingen*, 977 F.3d 1302, 1307 (11th Cir. 2020) ("[A] plaintiff must commence a Section 1983 claim arising in Florida within four years of the allegedly constitutional or otherwise illegal act.'") (citation omitted).

defendants "were motivated substantially by retaliatory animus" to fabricate allegations against him and use excessive force against him. (*Id.* at 31–32)

The First Amendment "'protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right.'" *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023) (quoting *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019)). "To state a claim for First Amendment retaliation under § 1983, a plaintiff generally must plead (1) that the plaintiff engaged in constitutionally protected speech, (2) that the 'defendant's retaliatory conduct adversely affected the protected speech,' (3) and that the retaliatory action caused the adverse effect on plaintiff's speech." *Turner*, 65 F.4th at 579 (quoting *Bennett v. Hendrix*, 423 F.3d at 1250). "'A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Turner*, 65 F.4th at 580 (quoting *Bennett*, 423 F.3d at 1254).

Taylor fails to state a plausible First Amendment retaliation claim. Taylor's allegations that he refused to cooperate in unidentified investigations and that he "asserted his rights" are simply too vague to show that such conduct constitutes constitutionally protected speech. Refusal to participate in an investigation might constitute protected speech, but Taylor neglects to describe this protected speech with any specificity. Furthermore, applying

excessive force and falsifying accusations against Taylor might constitute adverse actions, but Taylor fails to allege sufficient facts to demonstrate a causal connection between the retaliatory actions and his protected speech. "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting *Smith v. Mosely*, 532 F.3d 1270, 1278 (11th Cir. 2008)). Taylor vaguely alleges that the defendants were motivated by retaliatory animus, but this allegation is not specific enough to show that Taylor's alleged protected speech—refusal to participate in an unidentified investigation and assertion of his rights—"was a motivating factor behind" any defendant's application of force. *See Moton*, 631 F.3d at 1342. Accordingly, Taylor's First Amendment retaliation claim must be dismissed without prejudice.

**Count 5: Failure to Intervene**

In Count 5, Taylor attempts to state a failure-to-intervene claim against Sergeants Thomas and Deputies Hembry, Cheatham, Jones, Childress, Farrell, and Peter. (Doc. 1 at 32) He vaguely alleges that "each defendant had a reasonable opportunity to intervene to prevent the unlawful entry, detention, excessive force, denial of medical care, and fabrication of evidence by other deputies but failed to do so." (*Id.*)

"[The Eleventh Circuit] has recognized a cause of action for failure-to-intervene in cases involving claims of excessive force and false arrest." *Giddens v. Brooks Cnty.*, No. 21-11755, 2022 WL 836273, at *4 (11th Cir. Mar. 21, 2022). In fact, "[t]he principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades." *Helm*, 989 F.3d at 1272. "'[A]n officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force[ ] can be held liable for his nonfeasance.'" *Nute v. White*, 152 F.4th 1311, 1319 (11th Cir. 2025) (quoting *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007)). "[A] failure to intervene claim does not require that the defendant officer ha[ve] authority over the officer inflicting excessive force." *Nute*, 152 F.4th at 1320. The officer, however, is "only obligated to take reasonable steps to intervene in another officer's use of excessive force . . . if he is in a position where he can reasonably do so." *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1362 (11th Cir. 2024). Where the use of force "happened quickly and was over quickly," an officer usually does not have the opportunity to intervene. *Id.* at 1362–63. "Of course, a failure-to-intervene claim requires an underlying constitutional violation." *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023).

Taylor fails to state a claim that deputies failed to intervene to prevent the application of excessive force during his arrest. He alleges no facts to show

which deputies were present and had the opportunity to reasonably prevent Deputies Hemby and Cheatham from deploying their tasers.

Additionally, "a non-arresting officer may be liable for failing to intervene in an unlawful arrest 'if he knew the arrest lacked any constitutional basis and yet participated in some way.'" *Giddens*, 2022 WL 836273, at *4 (quoting *Wilkerson v. Seymore*, 736 F.3d 974, 980 (11th Cir. 2013). However, in the false-arrest context, unless the non-intervening officer "was part of the chain of command authorizing the arrest action," the Eleventh Circuit has held that "[m]erely being present with the arresting officers at the scene is not enough." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010). Instead, the plaintiff must show that the non-arresting officer (1) "was present during an arrest," (2) "knew that the arresting officer had no reasonable basis for . . . probable cause," and (3) "was sufficiently involved in the arrest." *Wilkerson*, 736 F.3d at 979. In other words, mere presence is not enough; a non-arresting officer must "kn[o]w the arrest lacked any constitutional basis and yet participate[ ] in the arrest in some way." *Id.* at 980.

Similarly, Taylor fails to state a claim that deputies failed to intervene to prevent his false arrest. He does not identify which deputies arrested him, and he does not explain why each non-arresting deputy should have known the "arrest lacked any constitutional basis." *Wilkerson*, 736 F.3d at 980. The deputies' mere presence at the scene during his arrest is insufficient.

Accordingly, Taylor's claim for failure to intervene in excessive force or false arrest must be dismissed without prejudice.

**Count 6: Malicious Prosecution**

In Count 6, Taylor attempts to state a claim for malicious prosecution against Sergeant Thomas and Deputies Hemby, Cheatham, Jones Childress, Farrell, and Peter. (Doc. 1 at 33–34) He alleges these defendants initiated criminal charges against him for armed trespassing, possession of narcotics, and resisting arrest without violence based on fabricated evidence and false statements. (*Id.*) He alleges the defendants lacked probable cause and acted with malice and reckless disregard for the truth, causing him to be held in custody as a pretrial detainee for 32 months. (*Id.*)

To establish a Fourth Amendment malicious prosecution claim, Taylor must allege facts showing "(1) [he] was seized under legal process; (2) the legal process justifying [his] seizure was constitutionally infirm; (3) the suit or proceeding terminated in [his] favor; and (4) the seizure would not otherwise be justified without legal process." *Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025). A claim for malicious prosecution "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough v. Smith*, 588 U.S. 109, 110 (2019); *see also Laskar v. Hurd*, 972 F.3d 1278, 1293 (11th Cir. 2020) ("[T]he favorable-termination requirement will bar a suit for malicious prosecution only when the prosecution remains

ongoing or terminates in a way that precludes any finding that the plaintiff was innocent of the charges that justified his seizure[.]"). The plaintiff must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Taylor currently awaits trial on felony charges of possession of methamphetamine and armed trespass and a misdemeanor charge of resisting an officer without violence. *State v. Taylor*, No. 23-CF-004852 (Fla. 6th Jud. Cir.). Therefore, he does not—and cannot—allege that these criminal charges have "terminated in his favor." *See Williams*, 965 F.3d at 1157. Accordingly, the malicious prosecution claim is not ripe for review and must be dismissed without prejudice.

**Count 7: *Monell* Claim against Sheriff**

In Count 7, Taylor attempts to state a *Monell* claim against Pasco County Sheriff Nocco in his official capacity. (Doc. 1 at 34–35) He generally alleges that Sheriff Nocco "as the final policy maker, maintained and enforced official policies, customs, or practices that were the moving force behind the violations of [his] constitutional rights." (*Id.*) He generally alleges a "widespread practice of unlawful searches, seizures, and excessive force by deputies" and a

"deliberate indifference to corruption, retaliation, and fabrication of evidence by deputies." (*Id.*)

"Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the [county] that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). "[A] [county] cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edits or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "To prove a *Monell* claim, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Andre v. Clayton Cnty., Ga.*, 148 F.4th 1282, 1300 (11th Cir. 2025).

Taylor's *Monell* claim must be dismissed because, at most, he pleads some elements of the claim but he has not provided any factual allegations to support the claim against Pasco County. *See Weiland*, 792 F.3d at 1330 (conclusory allegations of an official "policy or custom" of the Sheriff's Office as

the cause of a constitutional deprivation are insufficient). His bare bones allegations are nothing more than legal conclusions. A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Taylor's *Monell* claim must be dismissed without prejudice.

**Count 8: Equal Protection**

In Count 8, Taylor attempts to allege that his equal protection rights under the federal constitution have been violated. (Doc. 1 at 36) He alleges that the defendants "selectively targeted [him] without a legitimate basis, treated him different[ly] from similarly situated individuals due to his placement on the 'list,' and other arbitrary factors." (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001)); *see also McCleskey v.*

*Kemp*, 481 U.S. 279, 292 (1987) (explaining that a plaintiff "must prove that the decisionmakers in *his* case acted with discriminatory purpose") (emphasis in original). "A similarly situated prisoner must be prima facie identical in all relevant respects." *Sumrall v. Georgia Dep't of Corr.*, 154 F.4th 1304, 1312 (11th Cir. 2025) (quotation omitted).

Taylor's equal protection claims lacks any factual support. He fails to describe the "list," identify a similarly situated detainee, explain how similarly situated detainee were treated more favorably, or show how the defendants acted with discriminatory purpose against him based on race, religion, national origin, or another constitutionally protected basis. He makes no allegations that "he was treated differently on account of some form of *invidious discrimination* tied to a constitutionally protected interest." *Sweet*, 467 F.3d at 1319 (emphasis in original). Therefore, this claim must be dismissed without prejudice for failure to state a claim.

***Leave to Amend***

Because a more carefully drafted complaint might state a claim, the Court shall permit Taylor an opportunity to file an amended complaint. *See Hall v. Merola*, 67 F.4th 1282, 1295 (11th Cir. 2023) ([B]efore dismissing a complaint, a district court must give a *pro se* party at least one chance to amend the complaint if a more carefully drafted complaint might state a claim.") (quotations omitted); *see also Horn v. Estate of Camacho*, 817 F. App'x 872, 874

(11th Cir. 2020) ("Where a more carefully drafted complaint might cure the deficiencies in a complaint, a *pro se* plaintiff must be given at least one chance to amend before it is dismissed with prejudice. . . . Absent of one of [two exceptions not applicable here], a district court must advise a *pro se* plaintiff of the deficiencies in his complaint and give him an opportunity to amend." (internal quotation marks and citation omitted)).

If Taylor can allege a plausible claim for a civil rights violation that meets the pleading standards described above and name a proper defendant, he may file an amended complaint. Taylor's amended complaint must comply with the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (explaining that a *pro se* party must abide by "the relevant law and rules of court, including the Federal Rules of Civil Procedure"). Rule 8 provides that a pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). Additionally, a § 1983 plaintiff must allege with specificity the facts that make out his claim. *See Wilson v. Strong*, 156 F.3d 1131, 1134

(11th Cir. 1998) ("The contours of an asserted constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quotations omitted). Taylor must separate each cause of action against each defendant into a different count. Pursuant to Fed. R. Civ. P. 10(b), the amended complaint must state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." To promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" *Id*. Taylor must clearly specify which defendant is responsible for each act or omission that forms the basis of his claims. *See Weiland v. Palm Beach Cty.*, 792 F.3d 1313, 1320 (11th Cir. 2015); *see Brown v. Tallahassee Police Dep't*, 205 F. App'x 802, 802 (11th Cir. 2006) (affirming dismissal of *pro se* § 1983 complaint because the plaintiff "failed to name individual defendants and failed to articulate specific claims against those defendants"). Finally, Taylor must file the amended complaint on the standard form. M.D. Fla. L.R. 6.04(a)(3).

## III. Conclusion

Accordingly, it is **ORDERED AND AJUDGED**:

1. Taylor may proceed on his excessive force claim against Deputies Hemby and Cheatham in their individual capacities. Taylor's excessive force claim against the remaining defendants is **DISMISSED WITHOUT PREJUDICE**.

2. Taylor's claim for false arrest is **STAYED** pending the conclusion of his state criminal prosecution. Alternatively, Taylor may voluntarily dismiss this claim keeping in mind the applicable statute of limitation.

3. Taylor's claims for deliberate indifference, retaliation, failure to intervene, malicious prosecution, and a violation of his equal protection rights are **DISMISSED WITHOUT PREJUDICE**.

4. Taylor may file an amended complaint consistent with this order no later than **November 9, 2026.** The amended complaint will supersede the initial Complaint. Therefore, the amended complaint must contain all claims for relief. It must not refer to or incorporate the original complaint. If Taylor fails to file an amended complaint within the time allotted, this order dismissing the claims will become a final judgment. "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for amendment expires without the plaintiff [amending his complaint or] seeking an extension. And when the order becomes a final judgment, the district court loses 'all its prejudgment powers to grant any more extensions' of time to amend the complaint." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720–21 (11th Cir.

2020) (quoting *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126 (11th Cir. 1994)). Additionally, if Taylor does not timely amend his dismissed claims, this case shall proceed on Taylor's excessive force claim against Deputies Hemby and Cheatham as currently pleaded in the Complaint, and this action shall proceed to service of process on these two defendants.

5. Alternatively, if Taylor does not wish to pursue this action at this time, he may file a notice of voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A).

DONE and ORDERED in Chambers in Tampa, Florida, this 6th day of October, 2026.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**